Ila R. JESSE, Appellant–Plaintiff,

v.

**AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY, Davenport Insurance Agency, Inc., and Larry D. Smith, Appellees–Defendants.**

No. 02A03–9906–CV–214.

Court of Appeals of Indiana.

Feb. 29, 2000.

James D. Streit, Shambaugh, Kast, Beck & Williams, Fort Wayne, Indiana, Attorney for Appellant.

Steven D. Groth, Robert B. Clemens, Bose McKinney & Evans, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Ila R. Jesse appeals the trial court's entry of summary judgment in favor of American Community Mutual Insurance Company ("American Community"). Jesse filed her complaint against American Community, Davenport Insurance Agency, Inc. and Larry D. Smith ("Smith") seeking damages sustained by her as a result of American Community's rescission of her

health insurance policy.[1] Following a hearing, the trial court concluded that there was no genuine issue of material fact and entered summary judgment in favor of American Community.

We reverse.

## ISSUE

The sole issue presented for our review is whether, as a matter of law, American Community was entitled to rescind Jesse's insurance policy based upon her failure to disclose that she suffered from a functional heart murmur.

## FACTS

The parties agree to the following relevant facts. Prior to March of 1994, Jesse had health insurance provided through her husband's employer. After that employment was terminated, Jesse and her husband contacted Smith, an independent insurance agent employed by Davenport Insurance Agency, Inc., to determine whether they should obtain new health coverage or extend the previous policy under COBRA.[2] Smith suggested that Jesse and her husband apply for health coverage with American Community and provided them with an application form. Jesse and her husband took the form home to complete and subsequently met once again with Smith to review and finalize the application. Jesse signed the application.

Section 7 of the application requested information regarding the applicant's medical history. Jesse's husband stated on this portion of the application that he had undergone heart surgery in 1991. Jesse disclosed that she had merely undergone "routine exams." While discussing with Smith what effect heart surgery would have on her husband's application, Jesse informed Smith that she had been told by physicians for many years that she had a

"functional murmur" and asked Smith whether she should include that fact on her application. Smith asked Jesse whether she had ever been treated or prescribed medication for the functional murmur. Based on Jesse's response that neither treatment nor medication had ever been recommended to her, Smith instructed Jesse that it was not necessary to note the functional murmur on the form.

Following submission of the application, American Community declined health coverage to Jesse's husband due to his heart condition. American Community did issue a health insurance policy to Jesse effective May 1, 1994. Because American Community issued her a policy, Jesse terminated the existing health coverage provided by her husband's former employer.

In October of 1994, Jesse underwent aortic valve replacement surgery based on a diagnosis of aortic stenosis. Jesse incurred more than $40,000.00 in medical expenses that were submitted to American Community. By letter dated March 10, 1995, American Community informed Jesse that it was rescinding her policy retroactive to the original date of issue on the grounds that Jesse had failed to disclose on the application an adverse health condition and that the policy would have only been issued if Jesse had agreed to an exclusion rider for all heart conditions.

On January 26, 1998, Jesse filed her complaint against American Community, Smith and Davenport Insurance Agency, Inc., alleging wrongful rescission, breach of contract and fraud. American Community then filed its motion for summary judgment which the trial court granted.[3] This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When appropriate and finding no just reason for delay, the trial court may enter

---

1. Davenport Insurance Agency and Larry D. Smith do not participate in this appeal.

2. The Consolidated Omnibus Budget Reconciliation Act of 1985.

3. Davenport Insurance Agency, Inc. and Smith were not parties to the motion for summary judgment.

final judgment as to one or more but fewer than all of the claims or parties. Ind. Trial Rule 54(B). In determining the propriety of summary judgment, we apply the same standard as the trial court. *Wal–Mart Stores, Inc. v. Bathe,* 715 N.E.2d 954, 960 (Ind.Ct.App.1999). We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dible v. City of Lafayette,* 713 N.E.2d 269, 272 (Ind.1999); Ind. Trial Rule 56(C). On appeal, the appellant bears the burden of proving that the trial court erred. *Sallee v. Mason,* 714 N.E.2d 757, 760 (Ind.Ct.App.1999).

### Omission of Functional Murmur on Insurance Application

■ In entering summary judgment in favor of American Community, the trial court concluded that there was no genuine issue of material fact that American Community was entitled to rescind Jesse's insurance policy due to the omission on her application that she suffered from a "functional murmur." Jesse disputes the propriety of judgment as a matter of law. We agree with Jesse that summary judgment was inappropriate.

■ It is well-settled that "a material misrepresentation or omission of fact in an insurance application, relied upon by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option." *Foster v. Auto–Owners Ins. Co.,* 703 N.E.2d 657, 659 (Ind.1998) (quoting *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 672 (Ind.1997)). The material misrepresentation prevents a meeting of the minds as to the risk to be insured. *Id.* A misrepresentation or omission is material if knowledge of the truth would have caused the insurer to refuse the risk. *Id.*

■ Jesse does not dispute that she failed to disclose the functional murmur on her insurance application. American Community designated the uncontradicted affidavit of its underwriting director, Mark Federici, which stated that if Jesse had noted the functional murmur on her application, American Community would not have issued the policy to Jesse or would have at a minimum required her to sign an exclusion rider for all heart conditions. Consequently, we agree with American Community that there is no genuine issue that Jesse's failure to disclose the murmur was "material."

■ In addition, Jesse does not dispute that she read and signed the application. Thus, American Community contends that insurance agent Smith's relationship to American Community and Jesse's allegation that she relied on his advice is irrelevant because Jesse's signature on the application makes her responsible for any material misrepresentation or omission regardless of Smith's capacity as an agent. American Community relies primarily on two cases in support of its position.

In *Foster,* the plaintiff submitted several insurance applications, each seeking fire protection coverage for a different rental residential property. *Foster,* 703 N.E.2d at 658. The application for one property contained the request to "List all losses for the past five years at this or other location." *Id.* In response, the box marked "None" was checked. In fact, the plaintiff had suffered at least three fire losses in the immediately preceding five years. The insurance company moved for summary judgment arguing, as a matter of law, it was entitled to rescind the insurance contract based upon the plaintiff's material misrepresentations in his application. *Id.* On appeal to our supreme court, the plaintiff disputed neither the fact that he signed the application nor that it contained a misrepresentation. Instead, the plaintiff claimed that he gave truthful information to the insurance agent and that it was the agent who made the misrepresentation.

Our supreme court held that because the plaintiff signed the application, he was responsible for the information in it, including the inaccurate report of loss history, regardless of the agent's role. *Id.* at 660. The court concluded, as a matter of law, the insurance company had a right to void the contract based on the material misrepresentation. *Id.*

■ Similarly, in *Federal Kemper Ins. Co. v. Brown,* 674 N.E.2d 1030 (Ind.Ct. App.1997), *trans. denied,* the plaintiff signed a car insurance application omitting his stepson as a principal driver knowing that the stepson was, in fact, the principal driver of the car in question. *Id.* at 1032. Although the plaintiff blamed the insurance agent for the misrepresentation and claimed that he signed the application without reading it, this court held that, despite the plaintiff's claim of good faith, he was chargeable with the fraud. Indeed, "[i]t is the duty of every man to read what he signs. His failure to do so will or should not relieve him or allow him to avoid the contract." *Id.* at 1034. Even if it were the agent who perpetrated the fraud, inspection by the applicant would have shown that a fraud had been committed, and it is his plain duty to make the fact known to the company. *Id.* The applicant, who signs the application containing material misrepresentations, is chargeable with the knowledge of the false statements and must be held to have adopted them as his own. *Id.* (citing *Metropolitan Life Ins. Co. v. Alterovitz,* 214 Ind. 186, 14 N.E.2d 570, 577 (1938)). Specifically, we stated that "[t]o hold otherwise would be to ignore totally and render meaningless [the plaintiff's] signature certifying the contents of the application as true and correct." *Id.* at 1035.

Accordingly, we agree with American Community that because it is undisputed that Jesse read and signed her insurance application, Smith's agency relationship and Jesse's allegation that she relied on his advice is irrelevant. However, our inquiry does not end there. In both *Foster* and *Federal Kemper,* there was no dispute that the insurance applications contained misrepresentations and that inspection by the applicants would have revealed the false statements. Here, on the other hand, the facts as presented create a genuine issue of material fact as to whether Jesse's insurance application contained a misrepresentation and further whether even had she inspected the application, such inspection would have revealed any false statement.

Question 7(B) of the insurance application asked the following question:

Have you been examined, advised or treated by any physician, therapist, psychologist, chiropractor, or other practitioner or been hospitalized for any reason within the last ten years?

Record at 63. If the applicant answered "yes" to the question, the applicant was to provide further information such as dates, treatment, advice given and physician names. Jesse was unsure as to how to answer the question and informed agent Smith that she had been told by physicians that she had what was known as a "functional murmur." Because Jesse stated that physicians had recommended neither treatment nor medication due to the condition, Smith instructed Jesse that it was not necessary to note the functional murmur on the application. Therefore, Jesse answered "yes" to question 7(B) and provided further information that such exams, advise, or treatment were "routine exams."

■ Based upon the designated evidence, we cannot say, as a matter of law, that Jesse made a misrepresentation when she completed the application. We acknowledge that false representations concerning a material fact which mislead will void an insurance contract regardless of whether the misrepresentation was innocently made or made with fraudulent intent. *Curtis v. American Community Mut. Ins. Co.,* 610 N.E.2d 871, 874 (Ind.Ct. App.1993). Thus, once it is determined that a material misrepresentation has been

made, the contract is void regardless of the intent of the party who made the misrepresentation. Here, however, a genuine issue remains as to whether Jesse's omission constituted a false statement or misrepresentation.

Viewing the facts most favorable to Jesse, it is entirely plausible that question 7(B) could be interpreted to require disclosure of only those conditions for which the applicant had received specific medical treatment or had been advised to seek specific medical services. Although Jesse claims that no treatment or medication had ever been recommended for her functional murmur, medical records designated by American Community indicated that in December of 1992, Dr. Roger Sporre recommended that Jesse consult with a cardiologist about her condition. Accordingly, the evidence is conflicting as to whether Jesse was advised to seek treatment for the murmur and, thus, whether her failure to disclose such information constituted a false representation in response to the question.

Additionally, the record discloses that Jesse inquired of Smith as to how to answer the questions in an attempt to provide true and complete information. Even assuming Jesse read the application as she admits, inspection would not have revealed that a misrepresentation had been made. Unlike in *Foster* and *Federal Kemper*, Jesse's failure to disclose the murmur was not necessarily a false statement based upon the questions as asked, and reasonable diligence on Jesse's part would not necessarily have placed with her the power to prevent the alleged fraud. That is to say, the alleged misrepresentation may not have been evident on the face of the application.

Under the circumstances presented, a genuine issue of fact remains as to whether Jesse's failure to disclose her functional murmur constituted a false statement or misrepresentation in response to the application question 7(B) made with the intent to deceive, or whether her answer was true and complete to the best of her knowledge and belief. On these facts, we cannot say, as a matter of law, that American Community was entitled to rescind Jesse's policy based upon her failure to disclose the murmur. The trial court erred when it entered summary judgment in favor of American Community.

Reversed.

ROBB, J., and BROOK, J., concur.