**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**JOHN P. REED**
Abrahamson, Reed & Bilse
Hammond, Indiana

ATTORNEY FOR APPELLEE:

**LIBERTY L. ROBERTS**
Collier-Magar & Roberts, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUG WYNKOOP, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1111-PL-602 |
| | ) | |
| THE TOWN OF CEDAR LAKE, INDIANA, | ) | |
| AND THE TOWN COUNCIL OF THE | ) | |
| TOWN OF CEDAR LAKE, INDIANA, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffrey J. Dywan, Judge
Cause No. 45D11-1101-PL-08

**June 29, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Doug Wynkoop ("Wynkoop") appeals the grant of summary judgment in favor of his former employer, the Town of Cedar Lake, Indiana ("Cedar Lake"), and the Town Council of the Town of Cedar Lake, Indiana (collectively, "the Town").

We affirm.

**Issue**

Wynkoop raises one issue, which we restate as whether he possessed a constitutionally protected property interest in his position with Cedar Lake so that he was entitled to due process before his employment was terminated.

**Facts and Procedural History**

Wynkoop was employed by Cedar Lake for approximately seven years, working as a part-time Building Inspector and then as a full-time Code Enforcement Officer. In 2009, by ordinance, Cedar Lake adopted a sixty-page "Town of Cedar Lake Policy and Procedure Manual" ("Procedure Manual" or "Manual"), which states upfront that it is not a contract of employment. The Manual also contains a lengthy at-will employment provision, a progressive disciplinary policy provision, and an employee appeal provision. Wynkoop acknowledged receipt of the Manual on December 4, 2009.

By letter dated June 16, 2010, Cedar Lake notified Wynkoop of a disciplinary job action against him; the recommended discipline was employment termination. Alleging violations of the Procedure Manual and the Town Code of Conduct, the Town Administrator advised Wynkoop that, in accordance with the Manual, he was entitled to request an

administrative hearing before the Town Council. A hearing was held in June and, on July 7, 2010, the Town Administrator sent Wynkoop another letter informing him of the Town Council's decisions to suspend him without pay for thirty days and to demote him to the position of part-time Building Inspector. Wynkoop was provided documents pertaining to that position but, apparently, refused to formally acknowledge their receipt. His employment was eventually terminated.

Wynkoop filed a "Complaint for Writ of Certiorari, Declaratory Judgment, Injunctive Relief and Damages" against the Town. (App. at 13.) In part, he asked the trial court to declare that the disciplinary procedure "was violative of the Due Process rights afforded [him] under the Town's Personnel Policy" because the Town Council considered subject matter "beyond the four corners of the charging instrument." (App. at 16.)[1] The Town moved for summary judgment and filed a supporting memorandum of law, arguing that Wynkoop had no constitutionally protected property interest in his job. It designated as evidence an affidavit of the Town Administration to which was attached a copy of the Procedure Manual.

Wynkoop responded, designating his affidavit and the June 16, 2010 and July 7, 2010 letters from the Town Administrator. The Town filed a motion to strike portions of

---

[1] Wynkoop also sought the issuance of a Writ of Certiorari to Cedar Lake requiring it "to produce the entire record of proceedings regarding the disciplinary process and both hearings regarding [his] employment"; he asked the trial court to enjoin the Town from affecting his employment until the matter could be "resolved at a full and fair hearing before the Court"; and he further asked the court to "review the charging instrument, the Town's disciplinary hearing procedure and the transcript of evidence to make a full and fair determination as to whether the charges brought against [him] were sufficient, and sufficiently supported by the record of evidence to justify the disciplinary actions taken . . . ." (App. at 16-17.)

Wynkoop's affidavit, which was granted in part. On October 4, 2011, the trial court entered summary judgment in favor of the Town with the following explanation:

> The policy and procedure manual adopted by the Town of Cedar Lake did not create a contract of employment with Mr. Wynkoop. As such, Mr. Wynkoop had no property interest in his employment with the town. Mr. Wynkoop had the rights only of an employee at will. As such, he cannot bring a claim for breach of contract, nor can the disciplinary procedures described in the handbook provide a basis for making a claim for breach of due process.

(App. at 11.) (Citations omitted.) Wynkoop now appeals.

**Discussion and Decision**

Standard of Review

We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court. Wilson v. Isaacs, 929 N.E.2d 200, 202 (Ind. 2010). Summary judgment is appropriate only if the evidence designated by the parties "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from the facts are construed in favor of the non-moving party. Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). When material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. Hayes v. Trustees of Ind. Univ., 902 N.E.2d 303, 312 (Ind. Ct. App. 2009), trans. denied. We review a question of law de novo. Id. Further, this Court is not bound by the trial court's findings and conclusions although they aid appellate review and offer valuable insight into the court's rationale for its decision. SCI Ind. Funeral Serv., Inc. v. D.O. McComb & Sons, Inc., 820 N.E.2d 700, 706 (Ind. Ct. App. 2005), trans.

4

denied.

Analysis

Wynkoop contends that triable issues of material fact exist concerning whether his due process rights were violated when he was discharged from his employment. The Due Process Clause of the Fourteenth Amendment proclaims that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Perdue v. Gargano, 964 N.E.2d 825, 832 (Ind. 2012). Due process challenges require a two-part inquiry. The first question is whether the plaintiff was deprived of a protected interest in "property" or "liberty." Only after finding the deprivation of a protected interest do we determine whether the State's procedures comport with due process. Perdue, 964 N.E.2d at 832.

To have a property interest in a benefit, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Further, property interests are not created by the Constitution. Id. The hallmark of property is "an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) (citations omitted); Tri-City Comprehensive Cmty. Mental Health Center, Inc. v. Franklin, 498 N.E.2d 1303, 1305 (Ind. Ct. App. 1986). The source of such entitlement generally arises from statute, ordinance, or contract, but can also arise by agreement with a governmental entity for continued employment. Bankhead v. Walker, 846 N.E.2d 1048, 1053 (Ind. Ct. App. 2006).

5

Here, Wynkoop identifies three "state-law sources" of his purported property interest: the Procedure Manual, the Town's "rules and regulations" and the Town's ordinance. Clearly, however, the basis of each is the Procedure Manual. Thus, we set forth in some detail the relevant portions of that document.

*The Procedure Manual*

First, under "Introduction and Purpose," the Manual states its purpose and declares that "[i]t is written, adopted, and interpreted exclusively by the Town Council and their designee, and is not subject to modification, change, or contrary interpretation by any employee . . . ." (App. at 50.) A "disclaimer" follows: "This manual is not a contract of employment and does not guarantee employment for any specified duration." Id.

Later, under "Employee-at-Will," the Procedure Manual explains:

A. Public employment is based on the "at-will" doctrine. "At-will" employment means, any individual may voluntarily leave employment or <u>may be terminated by the Town at any time with or without cause.</u>

B. <u>This policy may not be modified by any statements contained in this manual</u> or any other employee materials, including applications, memoranda, or other documents provided to applicants and employees in connection with their employment. <u>None of these documents whether single or combined, create any expressed or implied contract of employment for a definite period, or an express or implied contract concerning any terms or conditions of employment.</u>

C. Similarly, <u>Town policies and practices with respect to any matter should not be considered as creating any contractual obligation on the Town's part or as stating in any way that termination will occur only "for cause".</u> Statements of specific grounds for termination set forth in this manual or any other Town documents are examples only, not all-inclusive lists, and are <u>not intended to restrict the Town's right to terminate at-will.</u>

D. Completion of a Probationary Period or conferral of regular status does not

6

change an employee's status as an at-will employee or in any way restrict the Town's right to terminate the employee or change the terms or conditions of employment.

(App. at 56-57, emphasis supplied.)

Under the "Employee Behavior/Conduct" section, the Manual incorporates a "Progressive Disciplinary Policy" with "established rules of conduct." Included is a non-exhaustive list of "Group I Rules" with an associated four-step approach for disciplinary violations, and a non-inclusive list of Group II Rules, for which an employee "may be subject to termination pending an Administration hearing." (App. at 73, 78-80.) Preceding the recitation of disciplinary violations is a statement that disciplinary action "rang[es] from verbal or written warnings to suspension or to immediate termination depending on the act and the circumstances." (App. at 79, emphasis supplied.)

The "Employee Appeal" part of the Procedure Manual is of particular interest. It reads:

> A. In the event that disciplinary action must be taken against an employee, it will be for just cause and normally in a progressive manner in an attempt to correct an employee's behavior, except in those cases of gross or serious misconduct where an employee may be subject to suspension, reduction, or removal from employment for violation of Group II rules.
>
> B. In cases of possible suspension without pay, reductions, in pay or position, or termination, an employee shall be notified of the charges in advance and be afforded the opportunity to present evidence and witnesses on his/her behalf before disciplinary action. Said hearing will be before the Town Council. The employee may also be represented by third party if so requested.

(App. at 80-81, emphasis supplied.) The Manual then explicitly defines "At-Will Employee" as allowing termination of employment "by the Town at any time with or without cause."

7

(App. at 89, emphasis supplied.) Wynkoop's signature appears on the Acknowledgment of Receipt, which confirms: "I also understand that nothing contained in this manual shall be construed as a contract or guarantee of employment." (App. at 105.)

Manual as Source of Property Right

Relying largely on the "Employee Appeal" section quoted above, Wynkoop insists that the "just cause" and "administrative hearing" provisions of the Procedure Manual give him a legitimate claim of entitlement in continued employment. As background, we observe that, historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment-at-will. Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 717 (Ind. 1997). If there is no definite or ascertainable term of employment, then the employment is at-will and is presumptively terminable at any time, with or without cause. Id. If the parties choose to include a clear job security provision in an employment contract, however, that presumption may be rebutted. Id. Nevertheless, the presumption of at-will employment is strong. Id. Whether employment is at-will is a determination of law for the court. Uhlman v. Panares, 908 N.E.2d 650, 655 (Ind. Ct. App. 2009).

In Orr, our Supreme Court considered whether an employee handbook constituted a valid unilateral contract under which the plaintiff could maintain a breach of contract claim. While refusing to adopt a general exception to the employment-at-will doctrine for employee handbooks, the Court cited Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 318 (Ill. 1987), where the Supreme Court of Illinois enumerated a three-part test under

8

which an employee handbook may constitute a unilateral contract and bind the employer: (1) the language of the employee handbook must contain a promise clear enough that an employee would reasonably believe that an offer had been made; (2) the handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the handbook. Orr, 689 N.E.2d at 720.

In reviewing the handbook at issue, the Orr court found no clear promise of an offer and further noted contrary provisions, including a disclaimer disavowing contract formation and a provision permitting modification of terms at any time. The Court concluded that, even under the Duldulao rule, the employee handbook did not constitute a valid unilateral contract as a matter of law. Id. at 720-22 (re-affirming the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause). Following Orr, this Court has declined to construe personnel policies as converting an individual's employment from an at-will relationship. See, e.g., Uhlman, 908 N.E.2d at 655; Hayes, 902 N.E.2d at 313.

Orr was decided on contract grounds rather than on constitutional grounds. Wynkoop acknowledges such but, distinguishing Orr, insists that the Procedure Manual in this case contains clear promises of employment security.

*Just Cause*

Emphasizing the excerpt, "In the event that disciplinary action must be taken against

9

an employee, it will be for just cause," Wynkoop contends that the Procedure Manual clearly promises termination for just cause only. Standing alone, the quoted language appears mandatory, although it does not explicitly assure disciplinary action "only" for just cause. See Lashbrook v. Oerkfitz, 65 F.3d 1339, 1347 (7th Cir. 1995) (reasoning that employee could not reasonably believe that the statement "Department Heads, with the approval of the Director, may dismiss any employee for just cause" would mean that employee could only be dismissed for just cause.) More problematic for Wynkoop, however, is the principle that the Procedure Manual must be read as a coherent whole. See Border v. City of Crystal Lake, 75 F.3d 270, 274 (7th Cir. 1996).

Here, from the "Introduction and Purpose" section, through the lengthy "Employee-At-Will" section to the "Definition" section, the Procedure Manual emphasizes the at-will nature of employment. An "At-Will Employee" is one who "may be terminated by the Town at any time with or without cause." (App. at 89.) The Manual specifically states that "Town policies and practices with respect to any matter should not be considered . . . as stating in any way that termination will occur only 'for cause.'" (App. at 56.) The Manual also speaks of possible "immediate termination depending on the act and the circumstances." (App. at 79.) Further, in the signed Acknowledgment of Receipt, Wynkoop recognized that "nothing contained in this manual shall be construed as a . . . guarantee of employment." (App. at 105.) Construed as a whole, the Procedures Manual does not contain a clear promise that employees would be terminated only for just cause.

10

*Administrative Hearing*

Wynkoop also asserts that the Procedure Manual clearly promises an administrative hearing before employment can be terminated.  He also argues that the Town's "course of performance" in affording him notice and a hearing creates a fact question regarding whether he was an employee at will or a "contract employee" whose employment could only be terminated "for cause."  (Appellant's Br. at 14-15.)

The threshold question before us, however, is whether Wynkoop has a property right in his employment.  "Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  Thornton v. Barnes, 890 F.2d 1380, 1386 (7th Cir. 1989) (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983)); Shook Heavy and Envtl. Const. Group  v. City of Kokomo, 632 N.E.2d 355, 361 (Ind. 1994).  Thus, the notice and hearing procedures found in the Procedure Manual do not transform Wynkoop's at-will employment into employment with termination for just cause only.

In addition, the fact that Wynkoop received a hearing before he was terminated does not establish that he had a property right in his job.  Our Court has recognized that policies or practices may give rise to a "property interest" but only if there are "mutually explicit understandings" that support a claim of entitlement to a benefit.  Morris v. City of Kokomo, 178 Ind. App. 56, 60, 381 N.E.2d 510, 514 (1978) (citation omitted); see also Lawshe v. Simpson, 16 F.3d 1475, 1480 (7th Cir. 1994).  As illustrated above, there was no mutually explicit understanding that Wynkoop had a property right in his job.  Absent such, the

11

Town's "course of performance" did not create a property right.

<u>Rules and Regulations as Source of Property Right</u>

In a separate argument, Wynkoop equates the provisions of the Procedure Manual to "rules and regulations" and contends they are the basis of a property right in his employment. Rules and regulations, promulgated pursuant to statute, may create vested rights. <u>See, e.g.,</u> <u>Wells v. Auberry</u>, 476 N.E.2d 869 (Ind. Ct. App. 1985), <u>trans. denied</u>. But no designated evidence shows that the Procedure Manual's provisions were promulgated as legally binding rules and regulations of Cedar Lake.

Wynkoop points out that the Manual was adopted by ordinance. Municipal ordinances have the same force and effect as statutes in the localities where they apply. <u>French v. Bristol</u> <u>Myers Co.</u>, 574 N.E.2d 940, 943 (Ind. Ct. App. 1991), <u>trans. denied</u>. When construing and applying an ordinance, legislative intent must be considered. <u>Id.</u> The intention of the body that passed the ordinance controls over the strict letter of the ordinance or the literal import of particular terms or phrases. <u>Id.</u>

Here, the stated purposes of the Procedure Manual include "to provide a consistent, systematic, and organized approach to the establishment, implementation, and administration of the personnel policies" of Cedar Lake and "to assist and guide personnel in the day-to-day direction and performance of the general workforce." (App. p. 50.) By its terms, the Procedure Manual is not a contract of employment and does not assure employment for any specified duration. The document is replete with references to at-will employment; it contains a disclaimer and an acknowledgment that nothing in the Manual shall be construed

12

as a guarantee of employment.  It was to be interpreted exclusively by the Town Council.

Obviously, the intent of the Manual is to inform employees of practices and policies; it is not intended to create a property interest.  Thus, even though the Manual was adopted by ordinance, it does not create enforceable rights against the Town.

## Conclusion

Under Indiana law, Wynkoop did not possess a cognizable property right in his position; rather, he remained an employee-at-will.  As such, he had no property interest entitled to procedural due process protection.  The trial court properly entered summary judgment in favor of the Town.

Affirmed.

MATHIAS, J., concurs.

ROBB, C.J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DOUG WYNKOOP,                              )
                                          )
    Appellant-Plaintiff,              )
                                          )
      vs.                            )    No. 45A05-1111-PL-602
                                          )
THE TOWN OF CEDAR LAKE, INDIANA           )
AND THE TOWN COUNCIL OF THE               )
TOWN OF CEDAR LAKE, INDIANA.              )
                                          )
    Appellees-Defendants.             )

ROBB, Chief Judge, concurring in result with opinion.

I respectfully concur in result. Although I agree the trial court did not err in granting summary judgment in favor of the Town, I do so on a basis different from my colleagues.

The majority holds that Wynkoop was an at-will employee and he therefore had no property interest entitling him to due process protection under the terms of the Manual. As I noted in my concurring in result opinion in McCalment v. Eli Lilly & Co., 860 N.E.2d 884 (Ind. Ct. App. 2007), however, our supreme court has recognized exceptions to the employment-at-will doctrine, including promissory estoppel. Id. at 896 (citing Orr, 689 N.E.2d at 718). To successfully invoke the doctrine of promissory estoppel, an employee

14

must assert and demonstrate that the employer made a promise; that the employee relied on that promise to his detriment; and that the promise otherwise fits within the Restatement test for promissory estoppel. Orr, 689 N.E.2d at 718.

When an employer drafts and offers an employee handbook containing specific disciplinary and grievance procedures, or makes promises regarding the same, I believe the provisions of the handbook and the promises of the employer should mean something. In McCalment, the employee was given a handbook that described discipline to be handled by the employee's direct supervisor first, who had authority to make commitments to employees. The handbook also described a grievance procedure. The employee was given two warnings by his supervisor but was promised that the discipline would be removed from his file one year after being issued. Based on those promises, the employee did not invoke the grievance procedure. Over a year from the last warning, the employee was placed on probation due in part to the two previous warnings, both of which should have been removed from his file. The employee was also reassigned, and upon committing an error in his new job, was terminated. The majority held that notwithstanding the provisions of the handbook and the promises made by his supervision, the employee was an at-will employee who could be terminated at any time for any reason. Although I agreed that the handbook did not in and of itself create a contract of employment for a definite term, I also believed the employee had shown a promise had been made to him that disciplinary matters would be handled at the lowest level first, that he had relied on the statements of his direct supervisor that the warnings about his job performance would be removed from his file after one year and not

15

considered in any future discipline, and that he relied on those promises to his detriment because he did not engage the grievance procedures available to him after either warning. 860 N.E.2d at 896-97. Although I agreed that the employee could be fired for any proper reason, I believed that firing him based in part on past warnings which he had been told would be removed from his file was an improper basis.[2] Id. at 897; see also McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 392-94 (Ind. 1994) (holding even an employee at will who can be fired for any reason cannot be fired for an improper reason, such as a refusal to break the law in carrying out his duties).

As in McCalment, the City here unilaterally wrote and provided to its employees, including Wynkoop, the Manual which describes disciplinary and grievance procedures. The Manual specifically states that it is not a contract of employment and does not guarantee employment for any specified length of time and it states that an employee may be terminated at any time with or without cause. However, the Manual also includes two levels of rules of conduct, a "progressive disciplinary policy," and an employee appeal procedure, and states that in the event disciplinary action is taken against an employee, "it will be for just cause and normally in a progressive manner . . . ." App. at 78-81. If the Manual is to mean anything at all, these provisions allowing for progressive discipline and discipline for just cause must be given effect. In an at-will state such as Indiana, an employer is not obligated to furnish to its employees a statement of its employment policies. Having made statements

---

[2] Nonetheless, because after the employee learned the employer would not be honoring its previous promises regarding removal of prior discipline from his file, he did not use the grievance procedures available to him to contest being placed on probation, his reliance became unreasonable, and I concurred with the majority's decision that his complaint was properly dismissed. Id. at 898.

16

in writing about the terms and conditions of employment, however, it is fundamentally unfair to allow an employer to essentially declare those statements illusory and raise the "employment at will" doctrine as a shield when it is called to task by an employee who can demonstrate detrimental reliance on the employer's failure to abide by those terms and conditions.

Wynkoop, however, has not demonstrated detrimental reliance on the provisions of the Manual. When he was informed of the disciplinary action against him, he received a hearing as provided by the employee appeal section of the Manual. There is no evidence that he forewent any other available recourse. He was also informed that the recommended discipline was termination. The Manual does provide that disciplinary action could consist of immediate termination, and there is no evidence that in the course of the disciplinary action against Wynkoop he was promised and agreed to any lesser discipline. Thus, regardless of what, if any, rights Wynkoop may have had, he has not shown detrimental reliance on any statements in the Manual and I concur in the result reached by the majority that the trial court properly granted summary judgment in favor of the Town.