# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ROBERT W. MARKETTE, JR.**
**KENDRA L. CONOVER**
Hall, Render, Killian, Heath & Lyman, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 07 2014, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| UMBRELLA FAMILY WAIVER SERVICES, LLC, | ) ) ) |
| Appellant-Petitioner, | ) ) |
| vs. | )     No. 49A02-1306-PL-525 ) |
| INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, | ) ) ) |
| Appellee-Respondent. | ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy Oakes, Judge
Cause No. 49D13-1212-PL-47680

April 7, 2014

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Umbrella Family Waiver Services, LLC ("Umbrella"), appeals the trial court's denial of its Verified Petition for Judicial Review. We affirm.

## ISSUES

Umbrella raises two issues, which we restate as:

I.  Whether the Indiana Family and Social Services Administration ("FSSA") deprived Umbrella of due process of law in the course of terminating the parties' contract.

II.  Whether FSSA's termination of the contract exceeded its statutory authority.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. In 2003, Umbrella executed a contract with FSSA to provide home- and community-based services under the Medicaid program. The contract designated Umbrella as the "Provider." Appellant's App. p. 3. The contract provided the following options for termination:

38.  That this Agreement may be terminated as follows:

A.  By IFSSA or its fiscal agent for Provider's breach of any provision in this Agreement;

B.  By IFSSA or its fiscal agent, or by Provider, upon 60 days written notice.

*Id.* at 7.

On May 1, 2012, FSSA sent Umbrella a letter stating that it was terminating the contract, effective sixty days after receipt of the letter. The letter cited paragraph 38(B)

2

of the contract and did not state a reason for termination. However, the letter advised Umbrella of its right to seek administrative review.

Umbrella timely requested administrative review, and Umbrella and FSSA both requested summary judgment. An administrative law judge ("ALJ") granted FSSA's motion for summary judgment and denied Umbrella's motion for summary judgment. Umbrella requested review of that decision, and FSSA upheld the ALJ's decision.

Next, Umbrella filed a Verified Petition for Judicial Review with the trial court. After oral argument, the court denied Umbrella's Verified Petition and affirmed FSSA's termination of the contract. This appeal followed.

DISCUSSION AND DECISION

In an appeal of a decision by an administrative agency, our standard of review is governed by the Administrative Orders and Procedures Act, and we are bound by the same standard of review as the trial court. *Dev. Servs. Alts., Inc. v. Ind. Family & Soc. Servs. Admin.*, 915 N.E.2d 169, 176 (Ind. Ct. App. 2009), *trans. denied.* When a court reviews a decision from an administrative agency, the reviewing court may not substitute its judgment for that of the agency. *Id.* We will reverse an agency's decision if it is:

(1)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2)    contrary to constitutional right, power, privilege, or immunity;

(3)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4)    without observance of procedure required by law; or

(5)    unsupported by substantial evidence.

3

Ind. Code § 4-21.5-5-14 (1987). The burden of demonstrating the invalidity of agency action is on the party seeking review of the action. *Dev. Servs. Alts.*, 915 N.E.2d at 176.

## I. DUE PROCESS

Umbrella argues that under the federal and state constitutions, it had a property interest in its business relationship with FSSA, and it could not be deprived of its interest without "the full panoply of protections required by state and federal due process." Appellant's Br. p. 12. FSSA responds that its termination of the contract in compliance with the contract's provisions did not amount to a violation of Umbrella's constitutional rights. This issue has not previously been addressed in Indiana.[1] Umbrella does not present an analysis of its Indiana constitutional claims separate from its federal claims. Its claims under the Indiana Constitution are thus waived. *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 93 (Ind. Ct. App. 2001).

Our standard of review for constitutional questions is de novo. *State ex rel. Willard Library v. Evansville-Vanderburgh Pub. Library*, 848 N.E.2d 1162, 1164 (Ind. Ct. App. 2006). Due process challenges require a two-part inquiry. The first question is whether a party was deprived of a protected interest in property or liberty. *Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230, 233 (Ind. Ct. App. 2012), *trans. denied*. Only after

---

[1] In *Magnant v. Ambulatory Renal Servs., Inc.*, 575 N.E.2d 1029, 1032 (Ind. Ct. App. 1991), a panel of this Court stated in passing, "Medicaid was not enacted for the benefit of health care providers, and providers have no property interest in their continuing eligibility as providers." However, the provider in that case did "not assert any property interest in its status as a provider." *Id. Magnant* does not resolve the key question in this case, and its statement on whether Medicaid service providers have property interests in their contractual relationships is dicta.

4

finding the deprivation of a protected interest do we determine whether the State's procedures comport with due process. *Id.*

Property interests are not created by the federal constitution. *Id.* at 234. To have a property interest in a benefit, a party must have a legitimate claim of entitlement to it that is derived from statute, legal rule, or mutually explicit understanding such as a contract. *All-Star Constr. & Excavating, Inc. v. Bd. of Pub. Works*, 640 N.E.2d 369, 371 (Ind. 1994). A party must have more than an abstract need, desire, or unilateral expectation of receiving or continuing to receive a benefit. *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005).

We must first determine whether the contract granted Umbrella a property interest in continuing to serve as a Medicaid provider. We find persuasive the reasoning set forth in *Senape v. Constantino*, 936 F.2d 687 (2nd Cir. 1991). In that case, a physician challenged the State of New York's rejection of his application for reenrollment as a Medicaid provider. The court noted,

> Where the state provisions bestow a right that cannot properly be eliminated except for cause, that right constitutes property protected by procedural due process. On the other hand, the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them.

*Id.* at 690 (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2nd Cir. 1989) (citations omitted)). Noting that New York's Medicaid regulations permitted the State to terminate a Medicaid provider without cause on thirty days' notice, the court concluded

5

the physician had no property interest in continuing his status as a Medicaid service provider. *Id.* at 691.

Here, the General Assembly has given FSSA broad discretion in drafting provider agreements, stating that such agreements must "include information that [FSSA] determines necessary to facilitate carrying out of [the statutes governing the Medicaid program]." Ind. Code § 12-15-11-3 (1992). The contract at issue here grants FSSA two methods for termination. Under paragraph 38(A), FSSA could terminate the contract immediately if Umbrella breached any of the contract's provisions. Alternatively, under paragraph 38(B), FSSA (or Umbrella) could terminate the agreement, without cause, if sixty days' advance written notice was provided.

In light of the discretion granted to FSSA by statute in drafting contracts with service providers, and the discretion granted to the parties under the contract as to termination, we cannot conclude that Umbrella had a legitimate expectation that FSSA would be required to state a reason for terminating the contract under paragraph 38(B) or that Umbrella would be entitled to additional processes beyond the sixty-day notice requirement. Consequently, Umbrella failed to establish that it had a property interest in continuing its status as a Medicaid provider. *See Senape*, 936 F.2d at 691; *see also Diaz v. State of Fla., Agency for Health Care Admin.*, 65 So. 3d 78, 82 (Fla. Dist. Ct. App. 2011) (Medicaid provider agreement may be terminated without cause, and such termination did not affect a valid property interest).

Umbrella cites *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976), in support of its claim that it has a property interest in continuing to serve as a Medicaid provider, but

6

that case is not on point. In *Hathaway*, the United States Department of Health, Education, and Welfare ("HEW") twice inspected a nursing home over the course of three months and found multiple alleged violations, but it did not inform the nursing home of the violations. *Id.* at 231. Instead, HEW waited three months to inform the nursing home that it was terminating Medicaid payments to the facility and provided no pre-termination hearing. The United States Court of Appeals for the Seventh Circuit determined that principles of due process required a pre-termination hearing.

The current case is different from *Hathaway* in that FSSA does not allege that Umbrella has breached the contract, violated any statutes or regulations, or had an unfavorable inspection. Instead, FSSA seeks to terminate the contract without cause. That distinction alone is enough to distinguish *Hathaway*. Furthermore, the Seventh Circuit has sharply limited *Hathaway*'s precedential value. In *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1083 (7th Cir. 1982), the court noted that in *Hathaway*, the nursing home had not received advance notice of the alleged deficiencies and could not seek a post-termination hearing. The court further stated, "To the extent that *Hathaway* remains good law within the circuit it is limited to its unique factual situation, including a lack of prior notice of deficiencies from the terminating agency and the absence of post-termination appeal procedures." *Id.* In the current case, Umbrella was provided with post-termination appeal procedures.

Umbrella next argues that the termination of the contract amounts to a punishment, and due process requires that FSSA should be required to state a cause for termination and provide evidence. We cannot agree that termination without cause under

7

paragraph 38(B) implies wrongdoing on the part of the party against whom the contract is terminated, particularly when either party to the contract may terminate it in that manner. Furthermore, on the record before us, FSSA did not allege any malfeasance by Umbrella, in the termination letter or any other communication. In the absence of an allegation of wrongdoing, we cannot conclude from the plain language of the contract that FSSA's termination amounts to a punishment, even though termination may deprive Umbrella of some or all of its business. *See Diaz*, 65 So. 3d at 82 (termination was permissible even though Medicaid provider had been a longtime provider, had expected to continue as a provider, and may have been put out of business due to the termination of its contract).

Umbrella finally asserts that if FSSA's termination of the contract under paragraph 38(B) is upheld, then going forward FSSA will utilize paragraph 38(B) for all terminations of service providers, thereby insulating the reasons for its decisions from judicial review. Appellant's Br. p. 21. We think this concern is misplaced. If a Medicaid provider has breached the contract to the point that FSSA deems termination an appropriate sanction, it is unlikely to wait the sixty days required under paragraph 38(B) if the wellbeing of Medicaid recipients is at risk. Rather, FSSA is more likely to terminate under paragraph 38(A), which requires a statement of cause but does not impose a sixty-day waiting period.

Umbrella has failed to establish a property interest in continuing its business relationship with FSSA. Consequently, we do not reach the question of whether the procedures FSSA provided here comport with principles of due process.

8

## II. STATUTORY AUTHORITY

Umbrella argues that FSSA's decision to terminate the contract without stating a reason exceeds its statutory authority. The primary goal in statutory construction is to determine, give effect to, and implement the legislature's intent. *Dev. Servs. Alts.*, 915 N.E.2d at 181. A statute must be construed as a whole, looking to its object and policy. *Id.* Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.*

Umbrella cites Indiana Code section 12-15-22-1 (1992), which provides:

If after investigation the office determines that a provider has violated a Medicaid statute or rule adopted under a Medicaid statute, the office may impose at least one (1) of the following sanctions:

(1) Denial of payment to the provider for Medicaid services provided during a specified time.

(2) Rejection of a prospective provider's application for participation in the Medicaid program.

(3) Termination of a provider agreement permitting a provider's participation in the Medicaid program.

(4) Assessment of a civil penalty against the provider in an amount not to exceed three (3) times the amount paid to the provider in excess of the amount that was legally due.

(5) Assessment of an interest charge, at a rate not to exceed the rate established by IC 24-4.6-1-101(2) for judgments on money, on the amount paid to the provider in excess of the amount that was legally due. The interest charge accrues from the date of the overpayment to the provider.

Umbrella contends that under this statute, termination of a Medicaid service provider's contract is always a sanction and must always be preceded by an investigation and

identification of violations. Umbrella thus concludes that paragraph 38(B) exceeds FSSA's statutory authority under Indiana Code section 12-15-22-1 and is invalid.

We take a different view of the statute. The plain, ordinary, and usual meaning of Indiana Code section 12-15-22-1 provides that if FSSA determines that a provider has violated a statute or rule, it may select termination as a sanction. The statute cannot reasonably be read as stating that every termination is necessarily a sanction.[2] Furthermore, Indiana Code section 12-15-22-1 does not bar FSSA from adding to provider agreements a paragraph allowing either party to terminate the contract without cause. To the contrary, the General Assembly has given FSSA broad authority to prepare provider agreements, as noted above. *See* Ind. Code § 12-15-11-3. Umbrella has failed to demonstrate that FSSA exceeded its statutory authority.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

VAIDIK, C.J., and CRONE, J., concur.

---

[2] Umbrella also cites 405 Ind. Admin. Code 1-1-6 and 455 Ind. Admin. Code 2-6-7 to support its claim that FSSA cannot terminate the contract without cause, but, like Indiana Code section 12-15-22-1, we do not read those rules as barring termination without cause. *See Senape*, 936 F.2d at 691 ("That [the State] must issue regulations governing the 'for cause' termination of providers in no way precludes the [State] from issuing other regulations reasonably necessary to advance the objectives of the program.").